## BUCKLEY and others *vs.* ARTCHER.

Where a person purchasing cabinet furniture of the plaintiffs, on credit, had a short time before confessed a judgment in favor of A. and L. for a large amount, and very soon after the purchase he executed a chattel mortgage upon his entire stock in trade, including the furniture purchased of the plaintiffs, to the defendant, to secure the payment of $3500, and within a month or two after the purchase, the sheriff held several executions against him which he was obliged to return unsatisfied, for want of property whereon to levy; *Held*, that these circumstances were sufficient to justify the conclusion that, at the time of the purchase from the plaintiffs, the purchaser was insolvent.

*Held also*, that mere insolvency was not enough to avoid the sale; and though the purchaser knew himself to be insolvent, yet, as he made no false representations in relation to his condition, if he made the purchase with the honest intention of continuing his business, and paying for the goods, if he could, the plaintiffs could not avoid the sale for fraud. But if, on the other hand, the purchase was made with a knowledge of his own insolvency, and with a preconceived design of subjecting the goods to the judgment which he had already confessed, or to the mortgage he was about to execute, that it was such a fraud as would vitiate the sale, and the plaintiffs, upon ascertaining the imposition, would be justified in reclaiming their property.

*Held, further*, that in an action by the vendors, against a person claiming to hold the property by virtue of a chattel mortgage executed by the purchaser, to recover possession of the same, on the ground of fraud upon the purchase, the question presented was one of *motive*, viz: whether the purchaser acted with an honest or a dishonest design. That this was a question for the jury; and that it was error to withhold it from them.

THIS was an action to recover personal property. It was tried at the Albany circuit, in November, 1852, before Mr. Justice WRIGHT. The plaintiffs proved, upon the trial, that being dealers in cabinet furniture in the city of Boston, they sold to John Arts, of Albany, on the 9th of September, 1851, a bill of furniture amounting to $645.96, and on the first day of October following, another bill amounting to $74.65; that the sale was upon a credit of six months, and that, at the time of making the purchases, Arts made no representation or statement in relation to his pecuniary affairs or condition.

On the 13th of October, Arts wrote to the plaintiffs acknowledging the receipt of the furniture, and enclosing his notes for the amount of the bills. On the same day, he executed a chat-

tel mortgage to the defendant upon all the property in his store, including the furniture purchased of the plaintiffs, to secure the payment of $3500 on demand, or the payment of all sums that then were, or might thereafter become due from him to the defendant, or to Artcher & Lyman, and to indemnify the defendant and Artcher & Lyman against all liability for him by indorsement or otherwise, for all which it was declared the mortgage was given as security. On the 10th of July, 1851, Arts had executed a confession of judgment in favor of Artcher & Lyman for $3012, upon which judgment was entered on the 3d of October. It also appeared that on the first day of November, Arts had executed two other chattel mortgages to secure debts to other creditors. The plaintiff also gave in evidence several executions issued to the sheriff of Albany against Arts, in November, 1851, and which had been returned unsatisfied. On the 5th of November, an agent of the plaintiffs came to Albany, and upon examination, found the principal part of the furniture purchased of the plaintiffs in an auction store, and claimed by the defendant under the chattel mortgage of the 13th of October. The defendant refused to give up the property, and this action was brought to recover the possession.

The plaintiffs having rested, the defendant's counsel moved for a nonsuit, on the ground that the plaintiffs had failed to show property in the goods in question, and that the evidence, on the contrary, showed a sale to Arts, and title in the defendant. The court granted the motion, and the plaintiffs' counsel excepted. Judgment having been perfected upon the decision at the circuit, the plaintiffs appealed to the general term.

*W. J. Hadley,* for the plaintiffs.

*J. K. Porter,* for the defendant.

*By the Court,* HARRIS, J. The evidence of fraud in the purchase of the property in question by Arts is certainly not very decisive, yet I think there was enough to prevent a nonsuit. The circumstances proved were sufficient to justify the

Buckley *v.* Artcher.

conclusion that, at the time of the purchase, Arts was insolvent. He had recently confessed a judgment in favor of the defendant and his partner for a large amount. Very soon after the purchase—perhaps before the goods had reached his store—he executed a chattel mortgage upon his entire stock in trade for a still larger amount, payable on demand. Again, we find the sheriff holding executions against him which he was obliged to return unsatisfied, for want of property upon which to levy. But mere insolvency would not have been enough to avoid the sale. Though he knew himself to be insolvent, yet, as he made no false representations in relation to his condition, if he made the purchase with the honest intention of continuing his business and paying for the goods, if he could, the plaintiffs could not avoid the sale for fraud. But if on the other hand, the purchase was made with a knowledge of his own insolvency, and with a preconceived design of subjecting the goods to the judgment he had already confessed, or the mortgage he was about to execute, it was such a fraud as would vitiate the sale, and the plaintiffs, upon ascertaining the imposition, would be justified in reclaiming their property.

The case concedes that Arts, when he made the purchase, made no statements or representations, one way or the other, in relation to his pecuniary condition. It is not pretended that any artifice or device was resorted to, for the purpose of obtaining the property. Still, it is possible to avoid the sale for fraud. As fraud vitiates every contract where its taint is found, so here if the purchase was in fact made with a preconceived design not to pay for the property purchased, the plaintiffs had a right to rescind the sale. The question presented upon the trial was one of *motive*. It was, not whether Arts was solvent or insolvent when he made the purchase, but whether he acted with an honest or dishonest design. This was a question for the jury. I think it was error to withhold it from them. " A deduction of fraud may be made," says Kent, " not only from deceptive assertions and false representations, but from facts, incidents and circumstances, which may be trivial in themselves, but decisive evidence, in the given case, of a fraudulent design."

· (2 *Kent's Com.* 484.)   Thus, in *Bristol* v. *Wilsmore and Page,*
(1 *Barn. & Cress.* 514,) one Miller had purchased 100 sheep of
Page, for which he was to pay in ready money.   When the sheep
were delivered, Miller prevailed upon the servant of Page to
accept his check, assuring him that it was as good as money.
Miller's account with his bankers was in fact overdrawn, and
payment of the check was refused.   On the day the sheep were
delivered Miller confessed a judgment to his sister-in-law, upon
which an execution was issued, by virtue of which the plaintiff
levied upon the sheep.   Page having obtained the possession
.of the sheep, an action was brought to recover their value, the
plaintiff claiming that, being the property of Miller, he .was en-
titled to hold them under his levy.   The action was tried before
Abbott, Ch. J.   On the part of the defendants, it was contended
that no property in the sheep vested in Miller by the sale, he
having obtained possession of them by fraud.   The plaintiff in-
sisted that, inasmuch as there was no false representation made
to induce Page to part with the possession of the sheep, the
property passed to Miller.   The chief justice was of the latter
opinion, and the plaintiff had a verdict ; but upon an application
for a new trial the chief justice himself delivered the opinion of
the court, saying that upon further consideration the court were
all of opinion that there ought to be a new trial.   The ground
of this opinion is stated as follows : " If Miller contracted for
and obtained possession of the sheep in question with a precon-
ceived design of not paying for them, that would be such a
fraud as would vitiate the sale and would prevent the property
from passing to him.   Whether he obtained possession of the
goods with such a preconceived design is a question of fact
which ought to be left to the jury, and for that purpose the case
must go down to a second trial."   The same language is .equally
applicable to the case in hand.   Whether Arts obtained pos-
session of the plaintiffs' goods with a preconceived design of not
paying for them, was a question of fact, which ought to have
been left to the jury.   What their verdict would have been, or
should have been, we need not inquire.   It is enough that the
evidence was such as to render it proper to have a verdict upon

the question. (*See Root* v. *French,* 13 *Wend,* 570 ; *Cary* v. *Hotailing,* 1 *Hill,* 311 ; *Kilby* v. *Wilson, Ryan & Moody,* 178 ; *Durell* v. *Haley,* 1 *Paige,* 492.) In the latter case the chancellor says, "If a purchaser who is insolvent conceals that fact from the vendor, and thus obtains goods without intending to pay for them, it is a fraud, and the property is not changed in the hands of the vendee." I think the judgment should be reversed and a new trial ordered, with costs to abide the event.

[ALBANY GENERAL TERM, December 4, 1854. *Wright, Harris* and *Watson,* Justices.]