## Bingham v. Kendall, et al.

(Decided March 20, 1928.)

### Appeal from Grant Circuit Court.

1. Bankruptcy.—A discharge in bankruptcy, which by provision of Bankruptcy Act, sec. 17, as amended by Act Feb. 5, 1903, sec. 5, (11 USCA sec. 35), with certain exceptions, releases bankrupt from all his provable debts, makes a prima facie case of release from a prior liability subsequently asserted, placing on plaintiffs the burden of showing that it was one of those excepted from the operation of the discharge.

2. Bankruptcy.—Cause of action for money obtained by bankrupt from old, infirm women, ignorant of their right, by threats to take away their farm, coupled with implied false claim of power to carry threat into execution, involves "false pretenses" or false representations, and so is not released by the discharge in bankruptcy.

3. Bankruptcy.—Cause of action for money paid to bankrupt on his false representation that he had borrowed money on account of

his contract with plaintiffs, and would have to pay interest thereon, is within the class excepted from the operation of discharge in bankruptcy.

ROUSE & PRICE for appellant.

F. A. HARRISON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY—Affirming.

In the month of February, 1924, Nannie Kendall and Mary Kendall recovered a judgment in the Grant circuit court against Arthur W. Bingham for the sum of $1,550, with 6 per cent. interest thereon from February 23, 1923, until paid. A few days later an execution directed to the sheriff of Grant county was issued on the judgment and placed in the hands of the sheriff. On March 4, 1924, the execution was returned indorsed, "No property found." Thereupon the Misses Kendall brought this action under section 439, Civil Code, for the purpose of discovering what property the defendant had, and subjecting same to the satisfaction of the judgment. To this action certain parties were made garnishees. Bingham pleaded his discharge in bankruptcy, filed a certified copy of the order, and alleged that the debt sued on was provable under the Bankruptcy Act (11 USCA). Plaintiffs admitted the discharge, but denied that the debt was provable. The only evidence heard on this question consisted of the pleadings, instructions, and judgment in the former action. The trial court adjudged that the debt sued on was a liability for obtaining property by false pretenses or false representations, and that the discharge in bankruptcy was not a bar to the maintenance of the action. From that judgment this appeal is prosecuted.

Section 17 of the Bankruptcy Act (30 Stat. 544, 550, c. 541), as amended in 1903 (32 Stat. 797, 798, c. 487, Comp. Stat. 1913, sections 9585, 9601 [11 USCA, secs. 1, 35]), in so far as material, is as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . .
"(2) are liabilities for obtaining property by false pretenses or false representations."

It being conceded that appellees had notice of the bankruptcy proceeding, and appeared therein and re-

sisted appellant's discharge, the only question for determination is whether or not the liability sued on is one for obtaining property by false pretenses or false representations. At the outset, it is suggested that the entire record of the former proceeding should have been introduced in evidence. Doubtless this would have been better, but appellees are not in a position to complain, for the certified copy of appellant's discharge made a prima facie case in his favor, and the burden was then cast upon appellees to show that the debt sued upon was by law excepted from the operation of the discharge. Kreitlein v. Ferger, 238 U. S. 31, 35 S. Ct. 685, 59 L. Ed. 1184.

Taking up the evidence before us, we find the allegations of the petition in the original action as follows: On January 20, 1923, plaintiffs entered into a contract with the defendant by which they agreed to convey to him, on March 1, 1923, a 100-acre tract of land at the price of $7,000, of which amount $320 was paid in cash. A few days after the execution of the contract, defendant notified them that they could not make a deed conveying title to him, for the reason that Nannie Kendall, one of the plaintiffs, had been married to Frank Miller, and that he was living, and would have to sign the deed, a fact which defendant knew at the time he entered into the contract. It was true that Nannie Kendall was at one time married to Frank Miller, but he had been separated from her for many years, and had not been heard from since he left, that in their opinion he was dead, and so advised the defendant, and offered to give defendant possession of the land, and permit him to reserve payment until Frank Miller was heard from, or the said Nannie Kendall could make application for, and could obtain a divorce. Nannie Kendall did not own the fee-simple title to her interest in the land, and Frank Miller had no interest therein. Defendant refused to enter into any agreement with them, but willfully, and for the purpose of extorting money from them, threatened and told them that, unless they paid him $1,500, he would take their farm away from them, and that they would have nothing. The defendant also falsely told them that he had borrowed $6,000 from the Walton Bank, and that he had to pay the interest thereon for a year, and they would have to pay him the interest paid on that amount, which statement was untrue, and known to be untrue by the defendant,

and was made for the purpose of defrauding, mulcting, and extorting from plaintiffs the sum of $1,500.

At the time the threats were made, defendant was and is now a strong, vigorous young man. The plaintiffs were old, sick, and suffering from nervous breakdown, and mentally incapable of resisting the threats of defendant. By reason of being put in fear that their home and farm would be taken from them, and that they would be left penniless and homeless, as defendant threatened he would do, and by reason of their sick and feeble condition, they were overcome by defendant's threats, duress, and fraud, and paid him, on February 23, 1923, the sum of $1,820, of which amount the sum of $1,500 was wrongfully and fraudulently taken from them. They relied on and believed the aforesaid threats and statements of defendant to be true, and were put in fear thereby, and would not have paid him said sum had they not relied on and believed them to be true. Later on, an amended petition was filed, the allegations of which are these: The defendant wrongfully and fraudulently procured from plaintiffs the sum of $1,550 instead of $1,500 as stated in the original petition. Of this amount the defendant falsely represented that he would have to pay $350 as interest on money he had borrowed, and the remainder, $1,200, was obtained from them as set out in the original petition. The first paragraph of the answer contains a denial of all the allegations in the petition, except the contract of sale.

The allegations of the second paragraph of the answer are these: After the execution of the contract, the defendant made arrangements to raise the purchase price, $7,000, and had the money ready to be paid to plaintiffs. Plaintiffs then declined to make a deed, and, in consideration of their release, they agreed to, and did, pay defendant the sum of $1,550, which sum was paid pursuant to a written contract entered into between plaintiffs and him. The affirmative allegations of the answer were denied by a reply.

The instructions given by the trial court submitted the issues made by the pleadings. The jury returned a verdict in favor of plaintiff for $1,550, the full amount sued for, and judgment was rendered accordingly.

Though the items composing the $1,550 were not segregated in the instructions, they were segregated by the pleadings. Of the sum sued for, $1,200, it is claimed, was paid by plaintiffs because of the duress and fear in

which they were placed by Bingham's threat that, unless they paid that sum, he would take their farm away from them, and leave them nothing, while $350 was for interest paid by them because of Bingham's false representations that he had borrowed $6,000 from the Walton Bank, and would have to pay the interest thereon.

We shall assume that the averments of the petition were supported by evidence sufficient to authorize the instructions and sustain the judgment. Therefore, the only question for consideration is whether the items of $1,200 and $350 were obtained by false pretenses or false representations. We shall first consider the item of $1,200. We are not disposed to hold that duress may never involve the element of fraud. If Bingham had been dealing with persons who knew their rights, a different case would be presented. Here, however, he was dealing with two women, who, it is claimed, were old, infirm, and ignorant of their rights. He told them that, if they did not pay the money, he would take their farm away from them, and leave them nothing. As applied to the parties with whom he was dealing, these words carried a clear implication of power to do that which he claimed he would do. The effect is the same as if he had said, ''I can and will take your farm away from you, and leave you nothing.'' In other words, we have a well-defined threat, coupled with the false claim of power to carry that threat into execution. We are therefore constrained to hold that the language employed involved the element of false pretense or false representation within the meaning of the Bankruptcy Act.

With respect to the item of $350, there is the additional element that Bingham falsely represented that he had borrowed $6,000 from the Walton Bank, and would have to pay the interest thereon, thus clearly bringing this item within that class of claims that are not provable.

Judgment affirmed.

Whole court sitting.