## Loony Creek Coal Company v. Lewis.

(Decided December 11, 1928.)

324

D. Y. LYTTLE and ASHER & SHEHAN for appellant.

C. B. SPICER for appellee.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

Appellee instituted suit against appellant to recover $4,418.51. He alleged that through fraudulent representations appellant sold to him certain shares of its capital stock, for which he executed his note for $3,000, which note was transferred to the Bank of Lynch in due course, and that appellee was compelled to pay $2,818.51 in satisfaction of the debt in favor of that bank, caused by his execution of the note. Further he claims, in his petition, that when he purchased the stock it was the agreement that he should get out and deliver to appellant mining timbers, for which he should be paid by receiving credit on the note in the sum which should become due him for the mining timbers. He claims that he got out and delivered mining timbers, and that under his contract the amount due him for the mining timbers was $1,600. His claim, therefore, is that he was induced by fraud to sign a note payable to appellant, and because of the signing of the note he was compelled to pay the sum of $2,818.51, and that through the same fraud on the part of appellant he was induced to deliver it mining timbers, for which he should have been paid $1,600.

In its answer appellant made an issue with appellee on the question of fraud in connection with the sale of the stock to appellee and his execution of the note. It is admitted that the note was assigned to the Bank of Lynch in due course, but it was denied that appellee furnished any mining timbers, or that there was any agreement with him in relation thereto, or in connection therewith.

As a further defense appellant alleged that it filed a petition in bankruptcy in 1924, and that through regular proceedings it was adjudicated a bankrupt. This

adjudication was in 1925. In 1926 it made an offer of composition which was accepted by its creditors and confirmed by the court. It alleged that appellee was listed as one of its creditors, and that he received notice of the bankruptcy proceedings, but it admits that appellee filed no claim or answer in the bankruptcy proceedings. Appellant relied on the proceedings in bankruptcy and the result thereof as a complete acquittance of appellee's claim, and that he should not be allowed to recover because of these facts pleaded in his answer.

Appellee, in his reply, denied that he had any notice of the proceedings in bankruptcy, or that he knew anything about such proceedings until long after everything therein had been wound up. He also attacked the jurisdiction of the United State District Court for the Eastern District of Michigan, Southern Division, to entertain the proceedings in bankruptcy. He further alleged, in his reply, that he was induced to purchase the stock and execute his note through the materially false statements made to him by the officers of appellant; that the stock which he purchased was worthless, and that by reason of the fact that his claim as set up in his petition arose through the fraud of appellant it was not such a claim as could be satisfied through a discharge in bankruptcy.

The pleadings and the evidence reduced the case to an issue of fact as to whether appellee was induced to execute the $3,000 note through fraud practiced on him by the officers and agents of appellant. If the fraud was established by the proof it followed, as a matter of course, that appellee was entitled to recover the $2,818.51, as well as the $1,600 for which he had received no credit. He was compelled to pay the $1,600 twice. Once by the delivery of mining timbers, and again when he received no credit, according to the contract, when he finally paid the note. The difference between $2,818.51 and the amount of the note, with interest, appears to be represented by the amount that was paid by appellant to the Bank of Lynch in carrying out its accepted proposition for composition with its creditors.

The testimony in the case is rather extensive, and, as is usual in such cases, it is conflicting. The court submitted the case to the jury on the question of fraud; that is, he instructed the jury that, if they should believe from the evidence that the appellant falsely and fraudulently represented to appellee prior to, and at the time of, the

sale of the stock that appellant was a solvent concern, when its officers and agents making the representations knew that the statement was false and untrue, and if the statements were made for the fraudulent purpose of inducing appellee to purchase the stock, the jury should find for the appellee. But, on the other hand, if they did not believe that appellant made false statements or representations at the time of the sale or during the pendency of negotiations for the sale of the stock, or if the statements and representations so made were untrue but not known or believed by appellant to be untrue, the jury should find for the appellant. This was the effect of the first two instructions, and they were fully justified by the evidence. The jury was told that, if it found for the appellee, it should fix the sum of his recovery at a sum not to exceed $2,818.51, the amount he claimed he had paid on the note, and further that it should find for him in the sum not exceeding $1,600 for the mining timbers which he had delivered to appellant. The jury returned a verdict fixing the total amount of recovery at $4,025.84. The court entered judgment for $1,600, with interest from October 6, 1924, and $3,000 with interest from November 21, 1924, subject to a credit of $600 February 7, 1927. The $600 appears to have been the amount paid by appellant in the composition with its creditors, which sum was paid to the Bank of Lynch.

The jury having found that the fraudulent representations were made in connection with the sale of the stock and the obtaining of the mining timbers, the next question confronting us is whether the appellant was discharged from these debts by reason of the bankruptcy proceedings. This is not a case where appellee is resisting the payment of a note obtained from him through fraud after the rights of creditors had attached in the liquidation of an insolvent corporation. He paid the note, and the corporation received the benefit thereof, as it had sold the note to the Bank of Lynch before it went into bankruptcy, and the creditors also received the benefit of the $1,600 in services rendered by appellee in the delivery of the mining timbers. The stockholders of the corporation also received the full benefit of these sums, and they are in no position to complain if the appellee should be allowed to recover from the corporation the sums that were taken from him through the fraud of appellant and its officers and agents.

One thing is certain, and that is that appellee had no part in the bankruptcy proceedings. He did not accept the proposition for a composition, and he received nothing through the bankruptcy proceedings. A discharge in bankruptcy releases a bankrupt from all his provable debts, with certain exceptions. One of the exceptions is that the bankrupt is not released from liability for obtaining property by false pretenses or false representations. In the case of Friend v. Talcott, 228 U. S. 27, 32 S. Ct. 505, 57 L. Ed. 718, the United States Supreme Court held that the failure to file exceptions to the discharge does not waive the right of a creditor to insist upon a claim that is excepted from the list of dischargeable claims, by suit, or otherwise, after the bankruptcy proceedings.

In the case of Forsythe v. Vehmeyer, 177 U. S. 177, 20 S. Ct. 623, 44 L. Ed. 723, the United States Supreme Court, in discussing the question of debts excepted from those released by discharge in bankruptcy, said:

"Within this rule, as maintained by the court, there can be no doubt that the defendant below was not discharged under the Bankruptcy Act. A representation as to a fact, made knowingly, falsely, and fraudulently, for the purpose of obtaining money from another, and by means of which such money is obtained, creates a debt by means of a fraud involving moral turpitude and intentional wrong. It is not necessary to enlarge upon the subject. It is so plainly a fraud of that description that its mere statement obtains our ready assent."

In the recent case of Bingham v. Kendall, 223 Ky. 661, 4 S. W. (2d) 681, this court had before it a question very similar to the one now under consideration, except that that case was not as strong in favor of the creditor of the bankrupt as in the present case. We held, in that case, that a claim growing out of obtaining property by false prtenses or false representations was a liability which was not released by a discharge in bankruptcy. In that case the creditor had notice of the bankruptcy proceedings, and appeared therein, and resisted the discharge in bankruptcy. That case is conclusive of the question before us.

Counsel for appellant admit that the chief question for consideration on this appeal is the question of fraud.

They argue that the word "fraud" as used in the Bankruptcy Act means such fraud as involves moral turpitude, but the Bankruptcy Act has been amended from time to time and for that reason some of the old cases relied on by appellant are not in point. Section 17 of the Bankruptcy Act (30 Stat. 544, 550, c. 541), as amended in 1903 (32 Stat. 797, 798, c. 487), Comp. Stat. 1913, sec. 9601 (11 USCA sec. 35), in so far as material, is as follows:

> "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as . . . (2) are liabilities for obtaining property by false pretenses or false representations."

The quoted provision applies directly to such fraud as alleged by appellee in this case. Counsel for appellant argue at length that no fraud was established by the proof, but we cannot agree to that construction of the evidence before us. In our judgment there is not only evidence on that point sufficient to sustain the verdict of the jury, but the verdict is supported by a preponderance of the evidence.

Judgment affirmed.