**LOCAL INDUSTRIAL FINANCE COM-
PANY, Appellant,**

v.

**Buster McDOUGALE and Ida Mae
McDougale, Appellees.**

Court of Appeals of Kentucky.

March 18, 1966.

Elmer Morgan, Mapother, Morgan &
Stansbury, Louisville, for appellant.

Robert E. Fleming, Kunzman & Fleming,
Louisville, for appellees.

R. C. TARTAR, Special Commissioner.

The plaintiff, Local Industrial Finance
Company, filed an action against the de-
fendants, Buster McDougale and Ida Mae
McDougale, seeking judgment for the bal-
ance due on their promissory note, dated
January 12, 1961, amounting to $1,840.00
and interest.

The plaintiff alleged that to induce the
making of the loan the defendants made
and delivered to plaintiff their financial
statement in writing which showed that
they owed $7,924.02 to various parties; that
the financial statement was false and un-
true and was made with knowledge of its
falsity for the purpose of inducing plaintiff
to make the loan or extension of credit and

that it was relied on by the plaintiff to its damage in the sum sued for by plaintiff.

The defendants answered admitting their application for the loan but denying all other affirmative allegations in the complaint.

Thereafter, the plaintiff filed a motion for a summary judgment against the defendants on the pleadings, exhibits and depositions filed for the sum of $1,840.00 with interest. The Court below sustained the motion for judgment but fixed the amount of the judgment against the defendant Buster McDougale at $677.35, being the amount of new money (and charges therefor) obtained from the plaintiff on January 12, 1961. Recovery was denied as to the balance, being the amount due on McDougale's note of January 22, 1960, which had been renewed and incorporated in the note of January 12, 1961. The plaintiff's motion for an appeal has been sustained.

For the purpose of brevity hereafter the plaintiff, Local Industrial Finance Company, will be referred to as Local, and the defendant Buster McDougale will be referred to as McDougale.

The pleadings did not mention bankruptcy but it quickly developed that bankruptcy proceedings instituted by McDougale less than three months after obtaining the loan and extension of credit from Local and his discharge in bankruptcy would dominate this litigation. By common consent of the parties the issues have been centered on McDougale's discharge in bankruptcy and the effect thereof, under Section 17(a) (2) of the Bankruptcy Act, on the note in suit and McDougale's liability thereon. There is no claim that McDougale had not received value in full or that any part of the note is not a just obligation.

Our discussion can largely be confined to Section 17(a) (2) itself. It will not be profitable to trace in detail the developments of this and related sections of the Act, or to mark the legislative trail in all its efforts to bar the door of escape to the false and fraudulent. Section 17(a) (2) of the Bankruptcy Act as amended in 1960, 11 U.S.C.A. § 35(a) (2), provides in pertinent part as follows:

"(a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as * * * (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published or caused to be made or published in any manner whatsoever with intent to deceive * * *."

This is known as the Celler Amendment. The section so far as applicable here had previously granted a discharge except as to "liabilities for obtaining money or property by false pretenses or false representations."

The issue here is this: Whether the exception made by Section 17(a) (2) is limited to the new money (and charges therefor) obtained by McDougale from Local on January 12, 1961, as the trial court held, or embraces also the extension of and renewal of credit on the balance due on the original note, obtained by him at the same time and as a part of the same transaction.

■ As stated, the issue was disposed of by the trial court on Local's motion for a summary judgment. It is familiar law that summary judgment may be granted only where no genuine issue of material fact exists and the party is entitled to judgment on the law applicable to the facts as established on and by the motion. Gevedon v. Grigsby, Ky., 303 S.W.2d 282. This is such a case. The depositions both for Local and for McDougale leave no genuine issue of fact. The falsity of the financial statement made by McDougale and given by him to Local in connection with the January 12, 1961, loan and renewal and exten-

sion of credit is admitted by him. He concedes that he had failed to list thereon eight other creditors whom he owed nearly $5,-000.00. In his own handwriting on the financial statement he had written "we have no other debts". McDougale frankly stated that "I was hurting, and the guys was pushing me, and I had to have the money," and that "I will just make the statement that it was bearing on my mind at that time, that if I listed everybody, I couldn't get the money." And it is perfectly clear that he knew that in addition to the new money he wanted and received, he was obtaining a renewal and extension of the balance due on the January 1960 note.

This balance was incorporated in the new note, and the old note was marked paid and returned to McDougale. Ida Mae McDougale, who also signed the financial statement, testified that she had no corrections or additions to make to her husband's deposition, and that she would make the same answers to the same questions.

The financial statement which is a part of the record contains the heading that it is made, "For the specific purpose of obtaining a loan or extension of credit, either as principal, co-maker or guarantor from Local." And after providing spaces for listing, "The only persons or companies to whom I owe money" etc., co-maker and other relationships, and "other liabilities or other indebtedness of any kind whatsoever" etc., it concludes with the statement that "notwithstanding any previous dealings I may have had with Local I understand that in extending credit to me, it is relying on my financial condition as shown in this statement" etc.

This is the statement that McDougale admits that he falsified. He also admits that there was no question in his mind that Local was relying on him to give the information sought by the statement. The depositions of the employees of Local leave no doubt as to Local's reliance on the statement regardless of any past dealings with McDougale. They show that McDougale received and knew that he was receiving not only new cash and insurance certificates, but also an extension of his liability for the balance of the old note, all incorporated in the new note, with a service charge and precomputed interest. And they show that the new transaction was made by Local on the basis of McDougale's financial statement. None of this is controverted by any opposing testimony.

This leaves us with the question of law— the effect of Section 17(a) (2) of the Bankruptcy Act properly construed, on McDougale's total liability on the new note of January 12, 1961. The question is one of first instance before this Court, and its answer by this Court will establish a precedent. The language of Section 17(a) (2) is clear and unambiguous. There are no complexities in its terminology. It may well be that we could find the conclusion of the whole matter in the language of the section itself, and that no precedents or illustrations are necessary to make its exemptions applicable to the transaction in controversy. But "the world must have emphatic warrant."

We notice that prior to the 1960 amendment this court gave liberal construction to the exemption as then worded. False pretense, fraud and misrepresentation have always been anathema to our courts. Bingham v. Kendall, 223 Ky. 661, 4 S.W.2d 681; Loony Creek Coal Co. v. Lewis, 227 Ky. 323, 12 S.W.2d 852; Time Finance Co. v. Nelson, 312 Ky. 255, 227 S.W.2d 189, 17 A.L.R.2d 1204.

We further notice that there are two Kentucky statutes which are illustrative here, showing the repugnancy of fraud and false pretenses to public policy, and the stern measures which our state legislature has taken to combat the use of such devices in the procurement of money or property or the extension of credit. KRS 434.090(1) provides:

"Any person who knowingly makes or causes to be made, either directly or indirectly, any false statement in writing,

with intent that it shall be relied upon, respecting the financial condition or means or ability to pay, of himself or any other person in whom he is interested or for whom he is acting, to procure in any form whatsoever either the delivery of personal property, the payment of cash, the making of a loan or credit, the extension of a credit, the discount of an account receivable or the making, acceptance, discount, sale or endorsement of a bill of exchange or promissory note, for the benefit either of himself or the other person, shall be confined in the penitentiary for not less than one year nor more than five years."

And KRS 411.070 provides that any person who violates KRS 434.090, supra, shall be personally liable to any person damaged by the violation for the amount of the damage. Thus, we see something of a parallel in our own laws to the exemption provision of Section 17(a) (2).

Prior to the 1960 amendment of Section 17(a) (2) of the Bankruptcy Act, 11 U.S. C.A. § 35(a) (2), supra, we find that the majority of the courts of other jurisdictions took the view that where the debtor being liable on an existing note had negotiated a new loan to include its unpaid balance, and an additional amount in cash as well, and had made a false financial statement to induce the making of the new loan, the creditor was entitled to recover the entire indebtedness, notwithstanding the subsequent discharge of the debtor in bankruptcy. Personal Finance Company v. Bruns, 16 N.J.Super. 133, 84 A.2d 32; Public Loan Corporation v. Hood, Ohio Com.Pl., 125 N. E.2d 770; Personal Finance Company of Paterson v. Snyder, 131 N.J.L. 597, 37 A. 2d 822; Gregory v. Williams, 106 Kan. 819, 189 P. 932 (Kansas); Stewart v. Emerson, 52 N.H. 301; National Finance Company of Utah v. Valdez, 11 Utah 2d 339, 359 P.2d 9; Elisberg v. Simpson, Sup., 173 N.Y.S. 128; In re Russell, D.C., 52 F.2d 749; Erickson v. Bicknell, 8 Cir., 28 F.2d 729.

■ Without question the 1960 amendment must be said to strengthen and reinforce this view, its language expressly covering the giving of a false statement to obtain money or credit, or to obtain an extension or renewal of credit. And so a large majority of the courts of other jurisdictions have held that where the debtor obtained the renewal or extension of the balance due on an old note and new cash, all incorporated in a note, by false pretenses, false representations, or the giving of a false financial statement, he is not released by subsequent discharge in bankruptcy from any part of the new note. The whole note is still collectible. C H F Finance Company v. Jochum, 241 La. 155, 127 So. 2d 534; MAC Loan Plan v. Cooper, 23 Conn.Sup. 184, 179 A.2d 313; First Credit Corporation v. Wellnitz, 21 Wis.2d 18, 123 N.W.2d 519.

The last case cited, First Credit Corporation v. Wellnitz, is especially significant since prior to the 1960 amendment the Wisconsin court was one of the minority, limiting the creditor to the cash advanced. The facts in the Wellnitz case are in striking analogy to the facts here.

■ The mere fact that past business dealings with the debtor have been satisfactory does not preclude operation of this rule. Past experiences may perhaps excite interest in new business, but if the false financial statement figures in the making of the new loan or even if there is only partial yet real reliance thereon, the debtor will still be liable for the full amount, subsequent to his discharge in bankruptcy. Beneficial Finance Company v. Gardache, (La.App.) 164 So.2d 132.

■ All elements are made out here. There is the false financial statement of a material matter made by McDougale, knowing it to be false. There is the plainest intent on his part to deceive Local thereby, and to obtain fresh money, and the extension of old credit. There is the reliance of Local thereon and there is damage to it in

the full amount sued for. The false statement encompasses and permeates the whole transaction.

On the basis of the undisputed facts of this case, the language of Section 17(a)(2) and the authorities cited, the conclusion to be drawn here is ineluctable. The court below erred in awarding judgment limited to the new cash and equivalents received by McDougale and in holding that the balance of the old note included in the new note was released by McDougale's discharge in bankruptcy. Local is entitled to judgment in the full amount of the note sued on with interest.

We recommend that the judgment be reversed and that the trial court be directed to enter judgment in conformity with this opinion.

The judgment is reversed with directions to enter judgment in conformity with the opinion.